26 C.C.P.A. (Patents)

## DIRKES et al. v. EITZEN.

### Patent Appeal No. 4054.

Court of Customs and Patent Appeals.

May 3, 1939.

Eugene C. Brown, of Washington, D. C. (M. J. Reynolds and N. F. Presson, both of New York City, of counsel), for appellants.

Gustav Drews, of New York City (Hans v. Briesen, of New York City, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Examiner of Interferences awarding priority of invention of the subject matter in issue to appellee Eitzen.

The interference No. 71,872 is between a patent of appellants, No. 1,968,818, dated August 7, 1934, upon an application Serial No. 554,574, filed August 1, 1931, and a reissue application of appellee, Serial No. 745,600, filed September 26, 1934, of patent No. 1,822,769, dated September 8, 1931, upon application Serial No. 357,448, filed April 23, 1929.

Appellants are the junior party. The three counts originated as claims 1, 3 and 5 in the patent of appellants. The interference was declared December 6, 1935.

On January 7, 1935, an interference No. 69,776 was declared between the said patent of appellants and an application of appellee, Serial No. 338,065, filed February 7, 1929, in which interference the single count was claim 2 of the said patent.

There was another interference, No. 69,956, also declared on January 7, 1935, involving the same patent of appellants and an application of one James W. Decker, Serial No. 253,306, filed February 10, 1928, in which interference the single count was claim 9 of the patent. The applications of Eitzen and Decker, in the said former inter-

ferences, and the application of appellee, Eitzen, in the present interference, are owned or controlled by the same parties in interest.

In both former interferences the preliminary statement of appellants alleged a date of conception subsequent to the filing dates of both Eitzen and Decker and the Examiner of Interferences on February 12, 1935, issued an order to show cause why judgment on the record should not be entered against Dirkes and Roberts. On March 14, 1935, the last day of the motion period, Dirkes and Roberts filed a motion to dissolve in each of the said former interferences on the ground that Eitzen and Decker respectively had no right to make the counts in issue.

On May 22, 1935, and May 24, 1935, respectively, the Primary Examiners of Examining Divisions 7 and 16 granted the motions. Upon appeal, the Board of Appeals reversed the decisions of the Primary Examiners on April 8, 1936, and the Examiner of Interferences entered judgment against Dirkes and Roberts on April 13 and 14, 1936, respectively, in both interferences. On May 2, 1936, appeals were taken to the Board of Appeals which, on November 27, 1936, affirmed the decisions of the Examiner of Interferences and awarded priority to Eitzen and Decker respectively.

Dirkes and Roberts then appealed to this court, the record of the said two interferences being consolidated into a single record. The decisions of the Board of Appeals, holding that Eitzen and Decker, respectively, were entitled to make the counts in issue were affirmed by this Court. Dirkes et al. v. Eitzen and Dirkes et al. v. Decker, 96 F.2d 849, 25 C.C.P.A., Patents, 1176.

From what has heretofore been said, it will be observed that the present interference, declared December 6, 1935, was copending in the Patent Office with the two prior interferences until September 16, 1937, the date upon which it was noticed for appeal to this court.

In the instant case, the appellee, desiring an interference, filed his reissue application on September 26, 1934, including therein claims 1, 3 and 5 of the said patent of appellants. The claims forming the counts of the interference were finally rejected in an ex parte proceeding by the examiner November 3, 1934. On December 3, 1934, appellee appealed to the Board of Ap-

peals. The examiner's statement was filed December 13, 1934, and on November 5, 1935, the board reversed the decision of the examiner and held that appellee had the right to make the three claims which he had copied from appellant's patent. Whereupon the present interference was declared.

Appellants, the junior party, did not allege a date of conception in their preliminary statement prior to the filing date of the original application of appellee and the usual order to show cause why priority should not be awarded to appellee was issued against them by the Examiner of Interferences. Thereupon, appellants moved to dissolve the interference on several grounds, one ground being that appellee was estopped to make the claims by reason of his failure to proceed in one of the said prior interferences between the same parties and relating to common patentable subject matter, in accordance with the provisions of Rule 109 of the Patent Office. In view of our conclusion it is not necessary to set out the other grounds upon which the motion was based. Neither is it necessary to set out the counts of the interference.

The motion to dissolve was denied and upon appeal the Board of Appeals reversed the decision of the Primary Examiner on the ground of estoppel under Rule 109, holding as follows: "On the matter of estoppel, it is considered that although Eitzen was prior to Dirkes et al. in his original disclosure of the invention involved, he failed to make a timely motion to incorporate these counts into an interference between the parties during the motion period of the prior interferences in which these parties were involved and that Eitzen is now estopped to contest the right to these counts with the party Dirkes et al."

Upon a petition for rehearing on the ground that appellants had been placed under an order to show cause and that in such a case estoppel could not apply the Board of Appeals reversed its former decision and held that estoppel did not lie for the said reason set forth in the petition and awarded priority of invention to appellee. The board then denied the petition of appellants for a rehearing and from its decision awarding priority to appellee this appeal was taken.

Since we are of opinion under the circumstances heretofore set out that appellee is estopped because of his failure to move

under the provisions of Rule 109, it is not necessary to discuss any other issue of this appeal.

The present reissue application of appellee having been filed September 26, 1934, was a pending application during the entire motion period of both the said former interferences, the said period expiring on March 14, 1935. Interference No. 69,776 was between the same parties as is the present proceeding and while interference No. 69,956 was between these appellants and one Decker, the Decker application was owned by the same interests as the Eitzen application.

There can be no question but that the application here and those involved in one or the other prior interferences could have been merged in a single interference proceeding. Since the three applications each took claims from the same patent of appellants there can be no doubt but that the common assignee must have known that after the prior interferences were declared the herein involved application was then pending and deemed that it pertained to common subject matter between the same parties, directly in interference No. 69,776 and indirectly by reason of common ownership in interference No. 69,956.

It is clear to us that under the decisions of this court it was the duty of the common assignee to have amended its application in either of the said former interferences by adding the claims of its instant application in order to avoid the evil of unnecessary litigation that Rule 109 is intended to stop.

The law on this subject was set out by this court in the case of In re Austin, 40 F.2d 756, 759, 17 C.C.P.A., Patents, 1202, 1209, as follows: " * * * it has long been the practice in the Patent Office to require a common assignee, if it desires to raise the issue of priority, to bring into an interference, to which it is a party, all of its applications, patents, and claims which it deems should be made the basis of interference between it and the other parties thereto. Ex parte Temple and Goodrum, decided November 11, 1911, 176 O.G. 526, 1912 C.D. 70; Frickey v. Ogden, 1914 C.D. 19, Vol. 199, O.G. 307. Furthermore, if a party to an interference fails to comply with the rules of the Patent Office relative to the presentation of such claims, it is thereafter estopped from presenting them as a basis for another interference between the same parties. Ex parte Temple and Goodrum, supra; Frickey v. Ogden, supra; The New Departure Manufacturing Co. v. Robinson, 39 App.D.C. 504; In re Capen, 43 App.D.C. 342; In re Wasserfallen, 54 App.D.C. 367, 298 F. 826, 828; Application of Doble, 57 App.D.C. 10, 16 F.2d 350."

When the Board of Appeals made its decision herein it was without the benefit of our decision in Avery v. Chase, 101 F.2d 205, 26 C.C.P.A., Patents, ——. In that case we held that when a party to an interference proceeding fails during the motion period to bring forth claims which should have been determined in the interference he has forfeited his right to claim the subject matter involved, irrespective of the question of priority.

In view of the lengthy and detailed analysis of the pertinent authorities set out in Avery v. Chase, supra, we do not deem it necessary to extend this opinion by a further discussion of estoppel.

We are of opinion that as far as observance of Rule 109 is concerned, in view of our holding in Avery v. Chase, supra, it is immaterial that the junior party was under an order to show cause. The order to show cause is fundamentally a procedural rule and merely requires the junior party to show cause why, upon the record, priority should not be awarded to the senior party. This does not give appellee the right to ignore Rule 109. The case of Ex parte Johnson, 20 Patent Quarterly 284, relied upon by the board in its second decision, is not controlling in the instant case. Indeed we are unable to find in the Johnson case, supra, or any other case, a reason why an order to show cause changes the status of the parties under Rule 109. Neither has any sound reason for such change occurred to us. The object of Rule 109 is to prevent unnecessary and vexatious litigation. The fact that a party is under an order to show cause presents no obstacles to the application of the said rule.

We are not impressed with the contention of appellee to the effect once a finally rejected application has been appealed to the board under Rule 63(d), a subsequent motion under Rule 109 in connection with another interference is prohibited under Rule 95.

There is nothing in the rules of the Patent Office or the statutes which pre-

cludes a party, while in a proceeding under Rule 63(d), from protecting his rights by conforming to the provisions of Rule 109 after an interference has been declared between the parties. It is the purpose of Rule 109 to expedite procedure in interferences and it is the practice of the Patent Office to require the parties to bring in all inter partes controversies in a single proceeding.

It is quite true that on December 3, 1934, when the ex parte appeal of appellee was taken it was the only remedy available to him to protect his rights. No interference had been declared at that time between the parties. However, when the interferences of January 1935 were declared as aforesaid, appellee was certainly of opinion that his claims on ex parte appeal contained common patentable subject matter with the patent of appellants. Otherwise he would not have taken the appeal. Since he was of such opinion it was his duty under the decisions of this court and the practice of the Patent Office to have moved to amend during the motion period which expired March 14, 1935, in accordance with Rule 109. This would not have placed him at a disadvantage for the reason that should his motion to add the claims have been again denied by the examiner he could have taken an appeal in the inter partes proceeding to the Board of Appeals. As we understand the practice, the board would then have deferred action on the ex parte appeal already taken and decide the issues in the inter partes appeal, thereby carrying out the clear intent of Rule 109 of expediting litigation and settling all of the issues between the parties in a single proceeding.

If the appellee elects to ignore the possible effect of estoppel in not observing Rule 109 he must be prepared to abide the result. A motion under Rule 109 is not a declaration of interference. It is a proceeding which determines whether or not there is common patentable subject matter and whether or not the counts proposed should be incorporated in an interference between the parties.

If the contention of appellee were to be affirmed, matters, which could have been considered inter partes might go on as ex parte proceedings with ensuing appeals which involve, as happened here, subsequent, unnecessary inter partes proceedings and place an undue burden on the other party, the Patent Office and the courts.

For the reasons set forth herein we are convinced that the board should have awarded priority to the junior parties Dirkes and Roberts.

The decision of the Board of Appeals is accordingly reversed.

Reversed.

BLAND, Associate Judge (dissenting).

I must respectfully dissent from the decision of the majority reversing the decision of the Board of Appeals and holding that Eitzen was estopped to make the claims because of the fact that he did not present them under rule 109 in one of two former interferences.

It is not my purpose to here discuss at any great length my chief reasons for believing that the majority opinion is unsound since those views are in great detail stated in the dissenting opinion of Presiding Judge Garrett and myself in Avery v. Chase, 101 F.2d 205, 26 C.C.P.A., Patents, ——. We took the position there, and I take the position here, that the application of the doctrine of estoppel in Avery v. Chase, supra, was wholly unwarranted and was the extension of an unpopular doctrine which this court has strongly intimated (Jenks v. Knight, 90 F.2d 654, 24 C.C.P.A., Patents, 1227,) it was not in favor of extending.

It was pointed out in our dissenting opinion in the Avery v. Chase case that rule 109, when adopted, was a permissive rule and when the doctrine was first applied in connection with failure to bring forward a claim under the rule it was based upon the ground of res judicata—that is, what had actually been adjudicated. Later, the doctrine was modified and extended to include a so-called equitable estoppel, which had for its basis estoppel in pais. In that respect the doctrine was similar to that applied in Mason v. Hepburn, 13 App.D.C. 86. At later dates it was held that not only did estoppel apply where the matter had been adjudicated as it was in Blackford v. Wilder, 28 App.D.C. 535 (the first case on the question), but that it applied to all subject matter that *could have been adjudicated* in an interference. Subsequently, it was extended to a holding that it would apply when the issue could not have been adjudicated in a particular interference if the claims were not brought forward so as to bring about the declaration of another interference in which the issue could have been adjudicated.

But no case goes as far as the majority has gone in this case where during the motion period of the prior interferences the subject matter of the disputed counts had been held unpatentable to the party against whom the estoppel is sought. The majority opinion states: "It is clear to us that under the decisions of this court it was the duty of the common assignee to have amended its application in either of the said former interferences by adding the claims of its instant application in order to avoid the evil of unnecessary litigation that Rule 109 is intended to stop."

The last opinion of the board indicates that it was of the view that the instant issue could not have been tried in either of the prior interferences and that the declaration of another interference such as the instant one would have been necessary. The appellee argues that the instant issue could not have been tried without the declaration of an additional interference.

No reason has been called to my attention why, if the claims corresponding to the instant counts, had been allowed they could not have been presented and the issue adjudicated in the prior interference in which appellants and appellee were the sole parties. But, it is clear that in the prior interference in which Decker was a party, even though there was a common assignee for the Decker and Eitzen applications, the instant issue could not have been tried and a separate interference would have been declared. This, I think, is the well-settled practice in the Patent Office. In any event, if the claims had stood allowed and had been brought forward under rule 109 in either interference, additional preliminary statements would have been required since the subject matter of the claims being contested in the prior interference forms no part of the present issue.

While in In re Chase, 71 F.2d 178, 21 C.C.P.A., Patents, 1183; In re Long, 83 F.2d 458, 23 C.C.P.A., Patents, 1078; Jenks v. Knight, supra, and International Cellucotton Products Co. v. Coe, 66 App.D.C. 248, 85 F.2d 869, by reason of special circumstances, not necessary to discuss here, the doctrine of estoppel was not applied, in several other cases of this court, such as In re Austin, 40 F.2d 756, 17 C.C.P.A., Patents, 1202, and In re Shimer, 69 F.2d 556, 21 C.C.P.A., Patents, 979, the doctrine was greatly extended and the language in some of these decisions indicates to me that it was extended much further than was proper.

Obviously, if there is any right to apply a doctrine of estoppel for failure to come forward under rule 109 it is based upon the theory, or should be at least, that a party to an interference ought not to be permitted to conceal inventions of which his opponent is not apprised and avoid an interference at a time when he should seek to show his priority and then later be allowed the claims, the invention of which, under ordinary circumstances was first made by another.

As I shall hereinafter point out, based upon facts, some of which are not cited or discussed by the majority, Eitzen, on this record, has never stood in the position of concealing anything or attempting to avoid an interference for the purpose of avoiding the trial of an issue which he might lose.

To my mind, the facts in this case recited by the majority suggest, too plainly to call for extended argument, that no kind of estoppel known to the law can properly be imposed against Eitzen. It seems unusually clear that to impose the doctrine under the circumstances of this case is a radical, unwise and unsound extension of a doctrine which needs restriction rather than extension. As I pointed out in Avery v. Chase, supra [101 F.2d 216], in order to get away from the mischief that the extension of the estoppel doctrine was bringing about—results "not consistent with the doctrines of equity upon which it rests"—the Patent Office at the solicitation of the Secretary of Commerce has adopted rule 116. In the case at bar the Board of Appeals has refused to extend the doctrine by saying in substance what might have been put in a rule similar to rule 116. Its reason for not applying estoppel in this case was based upon the fact that the alleged conception date of Dirkes et al. was subsequent to the filing date of the Eitzen application and that Eitzen should not be estopped for not bringing forward claims when Dirkes et al. stood under order to show cause.

I took the position in Avery v. Chase, supra, that the Patent Office had no right to say by rule when estoppel applies and when it does not apply. If the party stood estopped in law, the Patent Office by rule might give notice that it would not apply it under certain circumstances but that if it existed at all its effect could not be avoided by the mere promulgation of a rule. It seems to me that, if restriction rather than extension of the rule is desired, there is

about as much logic in declining to apply the doctrine of estoppel to a senior party when the junior party stands under order to show cause as there is under the circumstances outlined in rule 116. The courts announced, before the adoption of rule 116, that it did apply under the circumstances recited in the rule. See In re Alexanderson, 69 F.2d 541, 21 C.C.P.A., Patents, 983.

It must be conceded that by further extending certain court decisions, as was done in Avery v. Chase, supra, a case of estoppel may be spelled out against a senior party even though by virtue of the record dates the junior party is under order to show cause, but it is obvious to me why the Patent Office has taken the course it has in the instant proceeding, and in Ex parte Johnson, 20 Patent Quarterly 284. The patent profession, the Secretary of Commerce, and obviously the Patent Office itself became alarmed at the results of the gradual extension of the doctrine which, in so many instances, was depriving the first inventor of his legal rights upon insufficient grounds.

Regardless of all that may be said in favor of the refusal of the Patent Office to apply the doctrine as against a senior party when the junior party stood under order to show cause, I think it is sufficient for my purposes here to point out that no case in the Patent Office or the courts has ever definitely held to the contrary. This, to my mind, warrants the conclusion that the holding of the majority goes beyond any decided case, and therefore is an extension of this most unpopular doctrine.

My chief reason for believing that it is erroneous to apply the doctrine to 'Eitzen is because under rule 95 and rule 93, common patentable subject matter must be found to be claimed in the applications involved before any interference may be declared. One is required to bring forward claims for the purpose of getting into an interference. But, where the rules provide that there shall be no interference until common patentable subject matter is found to exist, and it is definitely held by the Primary Examiner that there is no such common allowable subject matter, how can it logically be held that it is the duty of such an applicant to bring forward his disallowed claims. Eitzen upon seeing the Dirkes et al. patent immediately claimed the subject matter. He did not try to avoid an interference. He sought an interference when he copied the claims at a time when there was no other interference he could get into. He told the

Patent Office he was copying them for the purpose of interference and requested such an interference before the other interferences were declared. The Patent Office considered the claims with the right to an interference in view, and when he had won the claims the Patent Office, as it had the discretionary authority to do, declared the interference. When he copied the claims he pointed out that it was the duty of the Patent Office to have previously declared an interference between Dirkes et al. and the claims of his allowed patent which covered the Dirkes et al. application.

In view of the attitude of the Patent Office and of the particular circumstances of this case, it seems clear to me that it is inequitable to bar Eitzen because he did not bring forward claims when no trial of the issue of priority could have resulted. Under the circumstances did not he properly rely upon the clearly justifiable belief that if he won his ex parte proceeding he would be entitled to win priority in an interference to be declared. The Patent Office kept faith with him. When the claims were allowed they declared the interference as they should have done and were expected to do. Is it to be held now that the Patent Office exceeded its authority and that the first inventor in fact (and I think in law) is to be penalized for not doing a futile, and unnecessary thing in bringing forward claims when an interference trial as to priority could not have resulted?

The majority admits that Eitzen, when he appealed ex parte did the only thing he could do to protect his rights. He availed himself of a right granted by statute. It is suggested that it is the practice of the Patent Office, when interference proceedings are instituted involving claims on ex parte appeal, to suspend the ex parte appeal until final decision in the interference proceedings. Whether there is warrant in law for depriving a party of his right to an ex parte appeal in this manner I need not discuss here, but I feel certain that those winning their appeals under such circumstances should not be deprived of the fruits of their victory in the manner suggested by the majority.

Concededly, Eitzen and the Patent Office both proceeded upon the theory, as happens in numerous like proceedings, that if the party appealing won his ex parte appeal, he would have the opportunity of trying out priority in an interference to be declared. The Patent Office knew his al-

lowed patent claimed broadly the subject matter of these counts. It knew the two other interferences were proceeding when his ex parte appeal was decided. It did not apply the doctrine of estoppel then as the majority holds in effect it should have done.

As to the effect of Eitzen's ex parte appeal, I think it is well to remember what was said by the Supreme Court in Chapman et al. v. Wintroath, 252 U.S. 126, 137, 40 S.Ct. 234, 236, 64 L.Ed. 491, quoting from the earlier-decided case of United States v. American Bell Telephone Co., 167 U.S. 224, 247, 17 S.Ct. 809, 42 L.Ed. 144: "A party seeking a right under the patent statutes may avail himself of all their provisions, and the courts may not deny him the benefit of a single one. These are questions not of natural but of purely statutory right. Congress, instead of fixing seventeen, had the power to fix 30 years as the life of a patent. No court can disregard any statutory provisions in respect to these matters on the ground that in its judgment they are unwise or prejudicial to the interests of the public."

Unquestionably, upon the instant record Eitzen is the first inventor of the subject matter of the pending counts. Has he done anything in law to warrant its being taken away from him by judicial fiat? Is the doctrine of estoppel to be extended in cases like this where the tribunals divide upon the question of the right to apply it and where the question is so doubtful that the Board of Appeals reverses itself upon reconsideration? What kind of diligence and foresight must a party litigant have in order to keep up with the swift and dangerous development of this unpopular doctrine? In Avery v. Chase, supra, it was sufficiently far-fetched to apply the doctrine against a party who clearly came forward and showed he was the first inventor in a separate interference set up by the Patent Office tribunals for the very purpose of determining priority between him and his adversary, but in the instant case the majority is going even further than in that case and holding that it is his duty to bring forward claims in interferences which were declared after he had been told by the Primary Examiner that he could not possibly have them, notwithstanding the fact that during the motion period he was vigorously contesting in an ex parte appeal his right to have the claims for the purpose of an interference. This, to my way of thinking, is running wild with the doctrine of estoppel.

Some of the decisions, like In re Shimer, supra, stress the point that the doctrine is a wholesome one because it prevents the multiplicity of proceedings and appeals. Eitzen had taken one appeal when he had the right to take it before any interference had been declared. If he had presented the claims at the time the majority stated, of course no interference would have been declared on these claims and since he had already been to the expense of preparing a record for appeal in the ex parte case, it is not seen how the undue multiplicity of litigation argument applies in the instant case. Moreover, if upon the ex parte appeal the examiner's rejection of the claims had been affirmed, no further litigation would have been necessary.

In this case, Eitzen (or his assignee) won the two prior interferences and as the senior party, under the practice in the Patent Office he is entitled to have allowed to him all common subject matter in the two applications. It must be remembered that in Eitzen's patent No. 1,822,769, of September 8, 1931, of which Dirkes et al. must have had full knowledge in view of its citation as prior art in the Dirkes et al. application, he had claims broad enough to cover the Dirkes et al. disclosure. The examiner in the record before us definitely held after going into the matter with great care, that the Eitzen patent covered broadly the invention disclosed in the Dirkes et al. patent. He pointed out where the counts at bar are more limited than the claims of the Eitzen patent. After Eitzen had been granted a patent for the broad subject matter of the Dirkes et al. application and after he had won two interferences as the senior party upon the clear showing that his application filing date was prior to any claimed date by Dirkes et al., and after he took an appeal ex parte and was allowed the claims in issue, is it possible that upon any equitable theory he can be estopped from claiming the matter in the present proceeding?

The fact that when the two interferences were declared Eitzen had been granted a patent, of which Dirkes et al. had full knowledge, containing claims broad enough to cover the Dirkes et al. application, seems to me to be an important consideration, which evidently is not so regarded by the majority since no mention is made of the matter. It is because of these facts that Eitzen here urges the pertinency of the decision of this court in Jenks v. Knight, su-

pra, and the decision of the Court of Appeals of the District of Columbia in Chapman v. Beede, 54 App.D.C. 209, 296 F. 956, where estoppel was not declared against a party for the sole reason that he had from the beginning broadly claimed the invention. It is true that in those cases the rule with reference to copying claims after more than two years had elapsed was involved. It seems wholly unjustifiable to hold Eitzen estopped because of his failure to claim something in an interference, where he had no allowable subject matter, when he had always claimed the broad invention and been allowed a patent for it. According to the holding of the examiner, Dirkes et al., must have known at the time they were in the two losing interference contests with Eitzen that Eitzen had claimed and been allowed in his issued patent subject matter which covered the Dirkes et al. application. What responsibility under such circumstances was Dirkes et al. placed under?

So, in summing up it seems to me that estoppel does not apply either on the basis of res judicata or estoppel in pais nor can it apply on account of the failure to comply with rule 109 since there was a definite holding that there was no allowable common subject matter at the time the majority says Eitzen stood estopped. No case involving facts comparable to those at bar has been cited by the majority and to my way of thinking the board's decision was sound and should not be reversed.

GARRETT, Presiding Judge, joins in the foregoing dissent.